## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-CR-87-TCK** |
| | ) | |
| **JASON NATHANIEL DAUGHERTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are Defendant Jason Nathaniel Daugherty's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("2255 Motion") (Doc. 30) and the United States' Motion to Dismiss Defendant's § 2255 Motion ("Motion to Dismiss") (Doc. 41).

### I.     Factual Background

On May 11, 2007, Defendant was charged in a four-count Indictment with: (1) felon in possession of a firearm and ammunition; (2) possession with intent to distribute Lortab, a Schedule III controlled substance; and (3) possession with intent to distribute Alprazalam, a Schedule IV controlled substance; and (4) possession of a firearm in furtherance of the drug trafficking crimes set forth in Counts 2 and 3.  On June 17, 2007, Defendant pled guilty to Counts 1 and 2 pursuant to a plea agreement ("Plea Agreement").  The Plea Agreement contained an Appellate and Post-Conviction Waiver ("Waiver") providing in relevant part that Defendant "waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." (Doc. 17-1 at 3.)  Under a heading entitled "Stipulations," the Plea Agreement also provided:

The defendant and the United States agree and stipulate to the following facts:

> a.   The defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense as contemplated by U.S.S.G. § 2K2.1(a)(2).

(*Id.* at 13.)  Both the Plea Agreement and the Court's plea colloquy made clear to Defendant that the Court was not bound by the stipulations either as to questions of fact or as to calculation of the sentencing range under the United States Sentencing Guidelines ("Guidelines").  The plea was not a binding plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

Prior to sentencing, the Court received the Presentence Investigation Report ("PSR"), which applied the 2006 version of the Guidelines.  The PSR grouped counts 1 and 2 and began with a calculation of the base offense level for Count 1.  The base offense level for felon in possession of a firearm, found at § 2K2.1(a)(2), was 24 because Defendant had committed that offense "subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled substance offense."  USSG § 2K2.1(a)(2); PSR ¶ 11.  The two felony convictions listed in the PSR were both convictions in Tulsa County charged in 2004 -- Larceny from the Person, CF-2004-3699; and Possession of a Controlled Drug With Intent to Distribute, CF-2004-1599.  PSR ¶ 11.[1]  Adding two levels for the firearm being stolen and four levels for possessing the firearm in connection with another felony, the PSR reached an adjusted offense level of 30 for Count 1.  PSR ¶¶ 12, 13, 16.  Count 2 had an adjusted offense level of 8, and the higher offense level for Count 1 controlled the grouped counts.  *Id.* ¶ 23.  After a three-level reduction for acceptance of responsibility, the adjusted offense level was 27.  *Id.* ¶ 25.

---

[1]  The Oklahoma offense of larceny from the person occurs when "property, although not of value exceeding Fifty Dollars ($50.00) in value, is taken from the person of another." Okla. Stat. Ann. tit. 21, § 1704(2) (1997).

2

Next, the PSR determined whether to apply any "Chapter Four Enhancements," including the career-offender enhancement set forth at USSG § 4B1.1(a), which provides:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Relying upon the same two prior felony convictions -- namely, Larceny From the Person, CF-2004-3699 and Possession of a Controlled Drug With Intent to Distribute, CF-2004-1599 -- the PSR classified Defendant as a career offender. PSR ¶ 26. The career-offender enhancement resulted in an offense level of 24. *Id.* Because the offense level of 24 under § 4B1.1(b) was less than the otherwise applicable adjusted offense level of 27, it was not used. *Id.* However, the career-offender enhancement mandated a Criminal History Category VI, where a Criminal History Category V would have otherwise applied. *Id.* § 38. Adjusted offense level 27 and Criminal History Category VI resulted in a Guidelines range of 130 to 162 months. *Id.* ¶ 49.

The Court adopted the PSR at sentencing without modification and sentenced Defendant to a total of 130 months in custody, comprised of 120 months for Count 1 and 10 months for Count 2 to run consecutively. As of that date of this Order, Defendant has served almost 112 months of his 130-month sentence.

## II.    Procedural History of 2255 Motion

In the 2255 Motion, Defendant challenges his sentence based on the vagueness of the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another," as used in the Guidelines' definition of "crime of violence." U.S.S.G. § 4B1.2(a)(2) (2006). Like its statutory counterpart in the Armed Career Criminal Act ("ACCA"), this phrase is known as the

3

"residual clause" of the Guidelines' definition.  Defendant contends that the Court's unconstitutional application of the residual clause in § 4B1.2(a)(2) impacted two aspects of his sentencing: (1) the Court's use of Criminal History Category VI pursuant to the career-offender provision, *see* U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."); and (2) the Court's enhancement of his base offense level for Count 1, *see* U.S.S.G. § 2K2.1(a)(2) (using base offense level of 24 for firearm conviction if defendant had two prior felony convictions of either a crime of violence or a controlled substance offense); *id.* app. note 1 (stating that "crime of violence" has the same meaning given that term in § 4B1.2(a)(2)).

Defendant's vagueness challenge is based upon *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015) (invalidating residual clause of ACCA as unconstitutionally vague), and *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015) (extending *Johnson*'s reasoning to residual clause in the Guidelines, where defendant raised challenge on direct appeal).  Defendant argues that larceny from the person fails to qualify as a crime of violence if the residual clause in § 4B1.2(a)(2) is invalid.  Defendant further contends that he had no other qualifying convictions.

In its response brief, the United States did not attempt to distinguish *Madrid*, did not dispute that larceny from the person only qualifies as a "crime of violence" if the residual clause is given effect, and did not dispute Defendant's lack of other qualifying convictions.  Instead, the United States argued that *Johnson* does not apply retroactively to cases on collateral review when the *Johnson*-based error arose under the Guidelines rather than the ACCA.  The United States contends that *Johnson*, as applied to the Guidelines, is procedural rather than substantive under *Teague v. Lane*, 489 U.S. 288 (1989), and therefore cannot be applied retroactively to cases on collateral review.  Defendant did not file a reply brief.

On June 10, 2016, the Court ordered supplemental briefing on developments possibly impacting the parties' positions on retroactivity:

> The parties are ordered to file simultaneous supplemental briefs stating whether their positions remain as initially stated and addressing any impact of *Welch v. United States*, --- U.S. ---, 136 S. Ct. 1257 (2016); the Tenth Circuit's per curiam decision *In re Encinias*, No. 16-8038, 2016 WL 1719323, at *1 (10th Cir. Apr. 29, 2016) (authorizing second or successive post-conviction motion challenging career-offender guideline sentence); and other relevant decisions within the Tenth Circuit of which the parties are aware.

(Doc. 36 at 2.)  In its supplemental brief, the United States continued to argue that *Johnson/Madrid* do not apply retroactively to cases challenging the Guidelines on collateral review.  Alternatively, the United States "propose[d] a stay in the current proceeding to allow Defendant Daugherty to maintain his initial collateral attack status while the case law within the Tenth Circuit and the Supreme Court further develops."  (Doc. 38 at 5.)  In contrast, Defendant argued that the two decisions identified by the Court strengthened his arguments in favor of applying *Johnson* retroactively to Guidelines cases on collateral review.

On June 27, 2016, the United States Supreme Court granted certiorari in *Beckles v. United States* to address three questions: (1) whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in United States Sentencing Guidelines § 4B1.2(a)(2); (2) whether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable on collateral review; and (3) whether mere possession of a sawed-off shotgun, an offense listed as a "crime of violence" only in commentary to U.S.S.G. § 4B1.2, remains a "crime of violence" after *Johnson*.  *See* www.scotusblog.com/ case-files/cases/beckles-v-united-states.  The first two issues are also present in this case.

5

On July 14, 2016, the United States filed its Motion to Dismiss, arguing that Defendant's 2255 Motion must be dismissed because it falls within the scope of the Waiver in the Plea Agreement.  Defendant filed a response, arguing that the doctrine of mutual mistake permits the Court to consider Defendant's 2255 Motion on the merits, notwithstanding the Waiver.  The United States did not file a reply.

On July 19, 2016, in another § 2255 proceeding presenting the same retroactivity issue presented here, the United States formally moved for a stay pending the Supreme Court's decision in *Beckles*.  *See United States v. Fisher*, 00-CR-33-TCK (N.D. Okla.), Doc. 114.  The United States has not filed a separate motion to stay in this case but has requested a stay as an alternative to other forms of relief.  In deciding whether to stay this case, the Court has considered the arguments raised by the parties in *Fisher*.[2]

### III.    2255 Motion

#### A.    United States' Request for Stay

In civil cases, the Tenth Circuit has ruled that "[w]hen applying for a stay, a party must demonstrate a clear case of hardship or inequity if even a fair possibility exists that the stay would damage another party."  *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).  This rule vindicates the underlying principle that a party's right to proceed in court should not be denied except under the most extreme circumstances.  *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).  A criminal defendant's right to proceed on a § 2255 motion is equally if not more important than a civil

---

[2] On today's date, the Court denied the United States' motion to stay in *Fisher* for the same reasons set forth in this Order.

litigant's.  *See Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (explaining that "habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy").  Accordingly, if the United States cannot satisfy the above-quoted standard applied in civil cases, it is certainly not entitled to a stay in this habeas proceeding.

The Motion to Stay is denied for three reasons.  First, there exists a fair possibility, and indeed a substantial possibility, that a stay would damage this Defendant by delaying his release from prison.  This Court rarely sentences above the maximum Guideline range, and the United States has not specified any particular facts supporting a possible motion for upward variance upon Defendant's re-sentencing.

Second, the United States has failed to make any case of hardship or inequity, let alone a "clear case" of hardship or inequity.  The U.S. attorneys and federal public defenders in this district are expending extreme effort to interpret *Johnson* and provide relief in ACCA cases to qualifying defendants in a fair and expeditious manner.  *Madrid*'s application of *Johnson* to Guidelines cases further expanded this task, and a stay pending *Beckles* would allow attorneys to focus on ACCA cases.  It would also save judicial resources, particularly if the Supreme Court holds that *Johnson* does not apply retroactively in Guidelines cases.  However, saving of attorney time and judicial resources is not the sort of "hardship" that can outweigh a substantial risk of a criminal defendant overserving prison time.  Therefore, the Court holds that Defendant's possible right to immediate release trumps any judicial economy or saving of resources that would be occasioned by a stay.  *See United States v. Beane*, No. 08-CR-00260-PJH-1, 2016 WL 4045392, at *2 (N.D. Cal. July 28, 2016) (denying motion to stay pending *Beckles*) (reasoning that "staying these proceedings pending

7

a decision by the Supreme Court on this threshold question could result in prejudicial delay to defendant").  What the Tenth Circuit does or does not do in the event of an appeal plays no role in the Court's balancing of equities.

Finally, there is no guarantee that *Beckles* will be a majority decision or that it will reach the questions presented here.  Based on the Supreme Court briefs, there is at least some possibility the Court could decide the case on a more narrow basis and fail to reach the issues presented here. Further, the Supreme Court has not scheduled oral argument, and this Court has no indication of when *Beckles* will be decided.

For these reasons, the Court denies the Motion to Stay.  The Court reserves ruling on the question of whether a stay would be appropriate in cases where a defendant's likely release date is after *Beckles* is likely to be decided.  *See United States v. Rodriguez*, No. 13-20405, 2016 WL 4124096, at *1 (E.D. Mich. Aug. 3, 2016) (granting motion to stay where the defendant did not object and the "defendant would be unlikely to receive a sentence that would result in his release before mid-2017").

### B.       Retroactivity of *Johnson* as Applied to Guidelines

"The normal framework for determining whether a new rule applies to cases on collateral review stems from the plurality opinion in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)."  *Welch*, 136 S. Ct. at 1264.  Under that framework, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  *Id.*  (internal quotations omitted).  Two categories of decisions fall outside this general bar on retroactivity: (1) new "substantive" rules of criminal procedure; and (2) new

"watershed" rules of criminal procedure.  *Id.*  Defendant invokes only the exception for new "substantive" rules.

> *Welch* explained how to determine whether a new rule is substantive or procedural:
>
>> A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.  This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish.  Procedural rules, by contrast, regulate only the manner of determining the defendant's culpability.  Such rules alter the range of permissible methods for determining whether a defendant's conduct is punishable.  They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.

*Welch*, 136 S. Ct. at 1264-65 (internal citations omitted).  The *Johnson* rule was substantive because it "changed the substantive reach" of the ACCA and altered the class of persons that the ACCA punishes.  The Court reasoned:

> Before *Johnson*, the [ACCA] applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause.

*Id.* (internal citations and quotations omitted).

Applying *Teague* and *Welch*, the United States argues that invalidity of a statutory sentencing mandate must be contrasted with invalidity of an advisory Guideline range.  The United States contends that an "erroneous career-offender designation is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes" and that "the identically-worded residual clause that is

substantive when applied to the ACCA, is procedural as applied to the Guidelines." (Doc. 36 at 10; Doc. 38 at 3.)  Conversely, Defendant contends that *Welch*'s reasoning applies equally to the residual clause in the Guidelines.

The Court concludes that *Johnson*'s invalidation of the residual clause in U.S.S.G. § 4B1.2(a)(2), as recognized by the Tenth Circuit in *Madrid*, is a new substantive rule in this circuit that applies retroactively to cases on collateral review.  The Court adopts the reasoning of the only circuit that has addressed this question.  *See In re Hubbard*, No. --- F.3d ----, 2016 WL 3181417, at *7 (4th Cir. June 8, 2016) (granting request for authorization to file successive § 2255 motion) (holding that *Johnson*, as applied to the Guidelines, is a new substantive rule that applies retroactively to cases on collateral review).  The Fourth Circuit reasoned that the "substantive reach of the Sentencing Guidelines would be altered just as much as was true for the ACCA." *Id.* at *7. The court further reasoned that the Guidelines, while ultimately discretionary, "hardly represent a mere suggestion to courts about the proper sentences defendants should receive." *Id.*; *see also United States v. Beck*, No. 8:13CR62, 2016 WL 3676191, at *7-8 (D. Neb. July 6, 2016) (reaching same conclusion).

Although the Tenth Circuit has not issued a substantive holding on retroactivity, it has granted authorization to file second or successive petitions challenging the Guidelines' residual clause. *See, e.g., In re Encinias*, No. 16-8038, 2016 WL 1719323, at *1 (10th Cir. Apr. 29, 2016). Further, similar to the *Hubbard* court, the *Madrid* court reasoned that the Guidelines remain the "mandatory starting point for a sentencing determination" and that "a district court can be reversed for failing to correctly apply them despite the ability to later deviate from the recommended range." *Madrid*, 805 F.3d at 1211.  Accordingly, following Fourth Circuit precedent and Tenth Circuit

reasoning, the Court holds that a *Johnson*/*Madrid* challenge to a Guidelines sentence may be raised by a defendant on collateral review.

### C.  Defendant's Entitlement to Relief

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence that was "imposed in violation of the Constitution."  Under *Johnson* and *Madrid*, the residual clause of U.S.S.G. § 4B1.2(a)(2) (2006) is unconstitutionally vague.  *See Madrid*, 805 F.3d at 1210.  Under Tenth Circuit law examining the Oklahoma statute, "larceny from the person is a crime of violence only if it falls within § 4B1.2(a)(2)'s residual clause."  *United States v. Patillar*, 595 F.3d 1138, 1140 (10th Cir. 2010).  The United States has not shown that Defendant had any other qualifying convictions to substitute for larceny from the person.  Therefore, Defendant's sentence was imposed in violation of the U.S. Constitution.  Specifically, the Court utilized § 4B1.2(a)(2)'s residual clause to: (1) classify Defendant as Criminal History Category VI pursuant to the career-offender provision in § 4B1.1(a); and (2) enhance the base offense level for Count 1, which controlled the grouped counts, under § 2K2.1(a)(2).

But for this constitutional error, Defendant would have had an adjusted base offense level of 23 and a Criminal History Category V, resulting in a Guidelines range of 84-105 months.  As of the date of this Order, Defendant has served almost 112 months.  Therefore, there is a substantial likelihood that Defendant will be entitled to immediate release upon re-sentencing.

## IV.   Motion to Dismiss

Having determined that *Johnson*, as applied to the Guidelines, applies retroactively to cases on collateral review and that constitutional error occurred in Defendant's case, the Court must now determine whether Defendant is deprived of any remedy due to the Waiver in the Plea Agreement.

### A.    Miscarriage of Justice

When a defendant has waived his right to bring a post-conviction collateral attack in a plea

agreement and then brings a § 2255 petition, courts inquire: (1) whether the defendant's claim falls

within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his

appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.

*United States v. Viera*, 674 F.3d 1214, 1217(10th Cir. 2012).   Defendant's claim falls within the

scope of the Waiver, and Defendant waived his appeal/collateral attack rights knowingly and

voluntarily.    However, a court can still elect not to enforce a waiver if it would result in a

miscarriage of justice.

In this context, a "miscarriage of justice" occurs in one of four situations: (1) where the

district court relies on an impermissible factor such as race, (2) where ineffective assistance of

counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the

sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful. *Id.* at 1219.

This Court did not rely on any impermissible factors, Defendant's counsel was not ineffective in

negotiating the Waiver, and Defendant's sentence did not exceed the statutory maximum.   This

leaves only the issue of whether the Waiver is "otherwise unlawful."   In order for a waiver to be

"otherwise unlawful," the error being raised by the defendant must "seriously affect the fairness,

integrity or public reputation of judicial proceedings." *United States v. Hahn*, 359 F.3d 1315, 1327

(10th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).   Actual innocence is not

required for an error to affect the fairness of judicial proceedings.  *Olano*, 507 U.S. at 732.

The Tenth Circuit has already held that a *Johnson*-based Guidelines calculation error

"seriously affects the fairness, integrity, or public reputation of judicial proceedings" in analyzing

the fourth prong of its plain-error analysis. *Madrid*, 805 F.3d at 1211 (internal quotation omitted).

The court reasoned:

> We have recognized that when the correct application of the sentencing laws would likely significantly reduce the length of the sentence, circuit courts have almost uniformly held the error to implicate fundamental fairness issues. Madrid received an enhanced sentence under an unconstitutional sentencing Guideline, undermining the fundamental fairness of his sentencing proceedings.

*Id.* (internal citation and quotation omitted).

For the same reasons stated in *Madrid*, the Court finds that this Court's *Johnson*-based sentencing error not only affected Defendant's substantial rights but also affected the fundamental fairness of his sentencing proceedings. This Court sentenced Defendant -- independently and not bound by any terms of the Plea Agreement -- under a constitutionally infirm interpretation of the phrase "crime of violence" in § 4B1.2(a)(2). It bothered this Court at the time of sentencing that crimes such as larceny from the person and escape were considered "crimes of violence" under the residual clause, which often led to a career-offender classification under either the ACCA or the Guidelines. Although the Court was not bound by any stipulation in the Plea Agreement and could have departed downward from the Guidelines, the Court knows firsthand that the Guidelines calculation played a pivotal role in sentencing this Defendant. Increasing his criminal history category and adjusted base offense level undoubtedly resulted in a longer sentence. Other than a constitutionally infirm statute mandating a particular sentence, nothing could more greatly impact the fairness and integrity of the sentencing process than a constitutionally infirm definition in the Guidelines. Now that this particular infirmity has been corrected by the Supreme Court in *Johnson* and the Tenth Circuit in *Madrid*, the Court exercises its equitable discretion to relieve Defendant from the Waiver on grounds that his inability to raise this issue would result in a miscarriage of

justice. It seems axiomatic that a new substantive rule giving a Court discretion to vacate a final judgment also allows a Court discretion to relieve Defendant from a waiver of post-conviction rights.[3]

### B.    Mutual Mistake

Rather than the "miscarriage of justice" prong explained above, Defendant relied upon the contractual doctrine of mutual mistake to avoid the Waiver. *See generally United States v. Lewis*, 138 F.3d 840, 841 (10th Cir. 1998) (affirming district court's rescinding of a plea agreement based on the doctrine of mutual mistake where, in light of a subsequent Supreme Court decision, the evidence no longer supported the defendant's conviction under § 924(c)(1)); *United States v. Frownfelter*, 626 F.3d 549, 553 (10th Cir. 2010) (denying United States' motion to rescind the plea agreement because the mutual mistake at issue -- incorrect classification of the crime as a felony rather than a misdemeanor -- was not a basic assumption of the agreement) (nonetheless exercising broad remedial power to vacate felony conviction and remand for entry of a misdemeanor conviction and sentence without rescinding entire plea agreement). In order to rescind or otherwise remedy a plea agreement based on mutual mistake, the party seeking rescission must satisfy a three-part test: (1) the mistake must relate to a basic assumption on which the contract was made: (2) the mistake has a material effect on the agreed exchange of performances; and (3) the mistake must not be one as to which the party seeking relief bears the risk. *Id.* at 555.

Here, the parties stipulated in the Plea Agreement that Defendant had two qualifying convictions for purposes of § 2K2.1. One conviction forming the basis of this stipulation was larceny

---

[3] In *United States v. White*, No.13-CR-10-JED (N.D. Okla. June 7, 2016) (Doc. 82), the court reached a contrary conclusion. However, the motion was filed *pro se*, and the court did not extensively analyze the "miscarriage of justice" prong.

from the person.  Based on the change in law effected by *Johnson/Madrid*, this was a mutual mistake.  However, even without the benefit of briefing from the United States, the Court has identified two concerns regarding application of the mutual mistake doctrine to the facts presented.  First, the stipulation was not binding on the Court because this was not a Rule 11(c)(1)(C) plea agreement.  Defendant was advised repeatedly during the plea colloquy and in the Plea Agreement that the Court was not bound by any stipulations or the Guidelines.  The Tenth Circuit has indicated that "[i]f the parties have knowingly left sentencing to the discretion of the judge, then the sentence is not an essential term of the plea agreement."  *United States v. Ahlenius*, 198 F.3d 259, at *3 (unpublished) (10th Cir. Oct. 19, 1999) (affirming denial of a defendant's motion to withdraw plea where government and defendant were mistaken about whether career-offender enhancement would apply because court was not bound at sentencing by stipulations in plea agreement); *cf. United States v. Beck*, No. 8:13CR62, 2016 WL 3676191, at *7-8 (D. Neb. July 6, 2016 ) (correcting *Johnson*-based Guidelines sentencing error where binding Rule 11(c)(1)(C) plea agreement contained mutual mistake classifying defendant as a Guidelines career offender).

Second, although *Lewis* stands for the proposition that a subsequent change in law constitutes a mutual mistake as to an essential term of the plea agreement, that case involved a mistake regarding the elements of an underlying conviction rather than a penalty.  *See Lewis*, 138 F.3d at 841.  This distinction may be important in a mutual-mistake analysis.  *See United States v. Edmundson*, No. CR PWG-13-15, 2016 WL 3597574, at *7 (D. Md. July 5, 2016) (citing cases distinguishing between changes in law impacting the "possible penalty and not the elements of the offense") (striking plea agreement as to count impacted by *Johnson* because the parties suffered under mutual mistake of law as to the elements of that conviction rather than merely the penalty).

15

Without conducting a full-blown analysis of the mutual mistake factors, the Court has identified possible problems with this argument. Accordingly, the Court permits Defendant to assert the 2255 Motion, notwithstanding the Waiver, based on its remedial power to prevent a miscarriage of justice rather than based on the contractual doctrine of mutual mistake.

## V.      Conclusion

The United States' Motion to Dismiss (Doc. 41) is DENIED. Defendant Jason Nathaniel Daugherty's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 30) is GRANTED.

The United States Probation Office is ordered to prepare a revised PSR on an expedited basis. Re-sentencing is scheduled for September 13, 2016, at 2:30 pm. Defendant shall remain in custody until that time.

**SO ORDERED** this 22nd day of August, 2016.

**TERENCE KERN**
**United States District Judge**

16